**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Todd Provencher, Respondent,

v.

Ronald David Kirby, Jr., Appellant.

Appellate Case No. 2023-000919

Appeal From Marlboro County
Michael S. Holt, Circuit Court Judge

Unpublished Opinion No. 2026-UP-231
Submitted March 17, 2026 – Filed May 13, 2026

**REVERSED AND REMANDED**

Jon Rene Josey and Jeffrey L. Payne, both of Turner Padget Graham & Laney, PA, of Florence, for Appellant.

Edgar Lloyd Willcox, II, of Willcox Buyck & Williams, PA, of Florence, for Respondent

**PER CURIAM:** This case arises from a breach of contract action brought by Respondent Todd Provencher (Provencher) against Appellant Ronald David Kirby, Jr. (Kirby). Kirby appeals the circuit court's order granting summary judgment in

favor of Provencher, arguing the circuit court erred by finding that Kirby failed to produce title to Provencher in accordance with a real estate purchase contract. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On or about December 8, 2020, the parties entered into a real estate purchase contract (the Contract). Under the Contract, Provencher agreed to purchase real property—which includes a cabin and five adjacent lots[1] located in Marlboro County (collectively, the Property)—from Kirby for $45,000. In return, Kirby agreed to "transfer fee simple title to the Property to [Provencher]" and agreed that the "[P]roperty [would] be free of any liens, judgments[, or] mortgages."

Additionally, the Contract contained the following default provision:

> If [Provencher] defaults under this Contract and [Kirby] is not in default, [Provencher's] deposits shall be paid over to and retained by [Kirby] as liquidated damages . . . .

> If [Kirby] defaults under this Contract and [Provencher] is not in default, [Provencher] shall be entitled to any and all remedies provided by law and equity . . . .

Provencher gave Kirby a $37,000 deposit toward the purchase price of the Property. At the time the parties executed the Contract, Kirby had title to Lot 4—on which the cabin was located—but did not have title to the remaining four lots. Kirby attested that Provencher knew Kirby needed to obtain title to the remaining four lots prior to closing.

Late in January 2021, Mr. Harry Easterling, an attorney who was already assisting the parties in a closing transaction unrelated to the sale of the Property, informed Kirby that he no longer wanted to handle the closing of the Property due to his unfamiliarity with the owner of Lot 5 and Lot 6. On February 1, an employee of Mr. Easterling's firm notified Provencher via email that Mr. Easterling "[could not] certify title" to Lots 5 through 8. Kirby ultimately hired another attorney, Mr.

---

[1] The five adjacent lots were named "Lot 4," "Lot 5," "Lot 6," "Lot 7," and "Lot 8."

Tom Ingram, to assist with closing the purchase of the remaining lots and the sale of the Property.

On February 8, 2021, Kirby purchased Lot 5 and Lot 6 from the Sandhill Recreation Club, Inc., and received a deed to the lots. Two days later, Kirby purchased Lot 7 and Lot 8 from his son, and Mr. Ingram prepared the deed for the son to sign. Both deeds were not recorded until after the date of closing, but Kirby attested that the deeds were at Mr. Ingram's office ahead of the date of closing.

Around the date of closing, Provencher withdrew from the Contract and requested Kirby refund the $37,000 purchase deposit. According to Kirby's affidavit, Provencher withdrew from the Contract because Provencher believed Kirby did not own some of the lots being sold under the Contract. Kirby asserts that Provencher, by withdrawing prior to closing, defaulted under the Contract and that the Contract allowed Kirby to retain the purchase deposit as liquidated damages.

Subsequently, Provencher brought this action against Kirby, alleging breach of contract and, alternatively, unjust enrichment. Provencher later moved for summary judgment, asserting that Kirby, among other things, did not have title to the Property on the day of closing.

The circuit court heard Provencher's motion on April 20, 2023. The circuit court granted summary judgment in favor of Provencher, finding that Kirby "violate[d] such terms of the [Contract] between the parties to provide for the conveyance of fee simple title." This appeal followed.

## STANDARD OF REVIEW

"When reviewing the grant of a summary judgment motion, this court applies the same standard of review as the trial court under Rule 56, SCRCP." *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n.2, 677 S.E.2d 612, 614 n.2 (Ct. App. 2009). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "[T]he 'mere scintilla' standard does not apply under Rule 56(c). Rather, the proper standard is the 'genuine issue of material fact' standard set forth in the text of the Rule." *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023).

"At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact." *S.C. Prop. & Cas. Guar. Ass'n v. Yensen*, 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct. App. 2001). Rather, "[t]he purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder." *John Deere Constr. & Forestry Co. v. N. Edisto Logging, Inc.*, 443 S.C. 424, 434, 904 S.E.2d 889, 894 (Ct. App. 2024). "[A]n adverse party may not rely on the mere allegations in [the] pleadings to withstand a summary judgment motion[] but must set forth specific facts showing there is a genuine issue [of material fact] for trial." *Strickland v. Madden*, 323 S.C. 63, 68, 448 S.E.2d 581, 584 (Ct. App. 1994). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Moore v. Weinberg*, 383 S.C. 583, 588, 681 S.E.2d 875, 878 (2009).

## LAW AND ANALYSIS

Kirby argues that the limited evidence in the record demonstrates that a genuine issue of material fact exists as to whether Kirby violated the terms of the Contract to provide title to Provencher on the date of closing. We agree.

Under the Contract, by agreeing to "transfer fee simple title to the Property to [Provencher]" and agreeing that the "[P]roperty [would] be free of any liens, judgments[, or] mortgages," Kirby agreed to transfer marketable title to Provencher. *See* 77 Am. Jur. 2d *Vendor and Purchaser* § 79 (2026) ("[I]n the absence of a stipulation to the contrary, there is a presumption that marketable title will be conveyed to the purchaser of real property."); *Scalise Dev., Inc. v. Tidelands Invs., LLC*, 392 S.C. 27, 33, 707 S.E.2d 440, 443 (Ct. App. 2011) ("[M]arketable title is one free from encumbrances and any reasonable doubt to its validity." (quoting *Gibbs v. G.K.H., Inc.*, 311 S.C. 103, 105, 427 S.E.2d 701, 702 (Ct. App. 1993))).

Kirby's affidavit and deposition testimony support that, at the time the parties executed the Contract, Kirby (1) had title to the cabin and Lot 4, (2) needed to obtain title to Lot 5 and Lot 6 from Sandhill Recreation Club, Inc., and (3) needed to obtain title to Lot 7 and Lot 8 from his son. Kirby further attested that deeds were executed to transfer title of Lots 5 through 8 to Kirby and that Mr. Ingram had the deeds in his office in preparation of closing. Though Provencher relies on Mr. Easterling's February 1, 2021 notice that Mr. Easterling could not certify title to Lots 5 through

8, this notice was provided to Provencher before Mr. Ingram was hired to conduct the closing, and Kirby attested in his affidavit that Provencher knew Mr. Ingram was preparing the documents and deeds necessary for closing.

To the extent the circuit court relied on the deeds not being recorded until after the date of closing, our law does not require Kirby to record the deeds in order to convey marketable title on the date of closing. *See Frierson v. Watson*, 371 S.C. 60, 68, 636 S.E.2d 872, 876 (Ct. App. 2006) ("Although notice is assumed when a document conveying an interest in real property is recorded, recording is not necessary if the buyer has actual notice."). However, absent a recording of the deeds, Kirby was obligated to provide Provencher with proof of marketable title to the Property on or around the date of closing. *See Lowcountry Open Land Tr. v. Charleston S. Univ.*, 376 S.C. 399, 407, 656 S.E.2d 775, 779 (Ct. App. 2008) (noting that a closing date in a real estate contract was within a "reasonable time [for a buyer] to complete performance of the contract" where the contract did not include a "time is of the essence" provision as to the buyer's performance).[2] Here, the only evidence addressing the issue of whether Kirby had marketable title is (1) Kirby's affidavit and deposition testimony that Kirby had title to Lots 5 through 8 and was ready to provide proof of title on the date of closing and (2) Provencher's contention that Kirby did not have title to the Property. A jury could reasonably conclude with such evidence that Kirby did not breach the contract but could provide marketable title to Provencher on the date of closing.

Thus, viewing the evidence in the light most favorable to Kirby, we hold there is a genuine issue of material fact as to whether Kirby was able to provide Provencher with proof of marketable title to the Property on the date of closing. *See* Rule 56(c), SCRCP (noting summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *Moore*, 383 S.C. at 588, 681 S.E.2d at 878 ("In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.").

---

[2] While there is a "time is of the essence" clause in the Contract, this clause concerns Provencher's deposit toward the purchase price of the Property.

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**REVERSED AND REMANDED.**[3]

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.